LANE POWELL PC
DAVID G. HOSENPUD, State Bar No. 147433
hosenpudd@lanepowell.com
KENNETH R. DAVIS II, (*pro hac vice*)
davisk@lanepowell.com
MOHAMMED N. WORKICHO, (*pro hac vice*)
workichom@lanepowell.com
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204
Telephone: 503.778.2100
Facsimile: 503.778.2200

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
PAUL S. MALINGAGIO, State Bar No. 90451
pmalingagio@sheppardmullin.com
ARIELA R. PIER, State Bar No. 313329
apier@sheppardmullin.com
333 S. Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone: 213.620.1780
Facsimile: 213.620.1398

Attorneys for Defendant Vaptio, Inc.
and Shenzhen First Union Technology
Co., Ltd. and Specially Appearing
Defendants Yonghai Li and Fei Xu

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| MIKE SARIEDDINE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>VAPTIO, INC., a Washington corporation; YOUNGHAI LI, an individual; FEI XU, an individual; SHENZHEN FIRST UNION TECHNOLOGY CO., LTD., a Chinese corporation; MAGELLAN TECHNOLOGY INC., a New York corporation doing business as Demand Vape; LAN & MIKE INTERNATIONAL TRADING INC., a California corporation; BREAZY INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:20-cv-07785-VAP-MRW<br><br>**DEFENDANTS VAPTIO, INC. AND SHENZHEN FIRST UNION TECHNOLOGY CO., LTD'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Virginia A. Phillips<br>Date: June 7, 2021<br>Time: 2:00 p.m. |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. BACKGROUND FACTS ..... 4

A. Vaptio and First Union are Well-Established Names in the Vaping Industry. ..... 4

B. Defendants Develop and Market the ET AUTO Product, With Little Success. ..... 5

C. Plaintiff Sues Defendants and Resists Discovery. ..... 6

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. Plaintiff's Motion Should be Denied Under Rule 56(d). ..... 7

B. Plaintiff's Motion Fails on the Merits ..... 9

a. Genuine issues of fact exist that the ALIEN VAPE Mark is Weak. ..... 10

b. Genuine issues of fact exist that the goods are not identical. ..... 12

c. Genuine issues of fact exist that the disputed marks are dissimilar. ..... 13

d. Genuine issues of fact exist that the lack of actual confusion weighs against a likelihood of confusion. ..... 15

e. Genuine issues of fact exist that the parties' marketing channel eliminates confusion as to the source of the parties' products. ..... 16

f. Genuine issues of fact exist that vaping products attract discerning consumers. ..... 17

g. Genuine issues of fact exist that Defendants acted in good faith in selecting ET AUTO. ..... 18

h. Defendants discontinued ET AUTO. ..... 19

V. CONCLUSION ..... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adidas Am., Inc. v. Calmese*,
662 F. Supp. 2d 1294 (D. Or. 2009) ........ 11

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ........ *passim*

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 6, 7

*Barlow v. Ground*,
943 F.2d 1132 (9th Cir. 1991) ........ 7

*Brookfield Commc'ns, Inc. v. West Coast Enter. Corp.*,
174 F.3d 1036 (9th Cir. 1999) ........ 10, 13, 17

*Burlington N. Santa Fe R.. Co. v. The Assiniboine & Sioux Tribes of the Fort Peck Reservation*,
323 F.3d 767 (9th Cir. 2003) ........ 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 7

*Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox*,
353 F.3d 1125 (9th Cir.2004) ........ 8

*Entrepreneur Media, Inc. v. Smith*,
279 F.3d 1135 (9th Cir. 2002) ........ 7, 13

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010) ........ 7, 17

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000) ........ 13

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
994 F.3d 1107 (9th Cir. 2021) ........ 7

*Isle of Capri Casinos, Inc. v. Flynt*,
No. 216CV06148CASMRWX, 2016 WL 6495380 (C.D. Cal. Nov. 1, 2016) .... 11

*Margolis v. Ryan*,
140 F.3d 850 (9th Cir. 1998) .... 6

*Moroccanoil, Inc. v. Golan, No. CV1101974SJOJEMX*,
2012 WL 12885683 (C.D. Cal. Oct. 30, 2012) .... 11

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011) .... 10, 16

*Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*,
809 F.2d 601 (9th Cir. 1987) .... 16

*Oculu, LLC v. Oculus VR, Inc.*,
No. SACV 14-0196 DOC, 2015 WL 3619204 (C.D. Cal. June 8, 2015) .... 16

*Official Airline Guides, Inc. v. Goss*,
6 F.3d 1385 (9th Cir. 1993) .... 18

*One Indus., LLC v. Jim O'Neal Distrib.*,
578 F.3d 1154 (9th Cir. 2009) .... 12

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
354 F.3d 1020 (9th Cir. 2004) .... 16

*Pom Wonderful LLC v. Hubbard*,
775 F.3d 1118 (9th Cir. 2014) .... 13

*Rearden LLC v. Rearden Com., Inc.*,
683 F.3d 1190 (9th Cir. 2012) .... 7, 10, 15

*Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*,
707 F.2d 1030 (9th Cir. 1983) .... 6

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
875 F.3d 426 (9th Cir. 2017) .... 10

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
987 F. Supp. 2d. 1023 (C.D. Cal. 2013) .... 9, 12

**Other Authorities**

Fed. R. Civ. P. 56(c) .......... 6

Fed. R. Civ. P. 56(d) .......... 7, 8

Defendants Vaptio, Inc. ("Vaptio") and Shenzhen First Union Technology Co., Ltd. ("First Union") (collectively, "Defendants") submit the following in opposition to Plaintiff Mike Sarieddine's ("Plaintiff") Motion for Summary Judgment ("Motion").

## I.

## INTRODUCTION

This case is just the latest in a series of frivolous lawsuits filed by a trademark troll.[1] In each lawsuit, Plaintiff asserts rights in the trademark ALIEN VAPE and a related design mark, which is used on a product known as e-cigarette juice, *i.e.* the liquid used in a vape cartridge. This time around, Plaintiff alleges that Vaptio and First Union's sales of vape pod kits, a different product, under the mark ET AUTO infringes his marks.

The record before this Court lays bare how vacuous this entire litigation is. Plaintiff makes no claim of damages in this case and instead seeks to recover Vaptio's profits from its sale of the allegedly infringing products. However, as has been repeatedly pointed out to Plaintiff, there are no profits to recover. Vaptio's total gross revenue of the ET AUTO product in the United States is less than $107,000. The ET AUTO product was so unpopular, Vaptio cancelled all marketing of the product in the United States and removed the product from its main website in July 2019. Thereafter, apart from a few purchases by Plaintiff, Vaptio did not sell the ET AUTO product. Because of the lack of sales and the need to recall product, Vaptio had only losses and no profit with respect to this product. Thus, even if Plaintiff prevailed in this case (which is highly doubtful for reasons explained below) and could establish that he is entitled to Defendants' profits, there are simply no profits there to recover.

---

[1] Plaintiff has been involved in at least 28 trademark disputes in the last four years. (Declaration of Mohammed Workicho In Support of Defendants Vaptio, Inc. and Shenzhen First Union Technology Co., Ltd.'s Opposition to Plaintiff's Motion for Summary Judgment ("Workicho Decl.") ¶ 3, Ex. 1 at 4-5.)

Plaintiff's Motion is, in any event, premature. The discovery deadline in this case is not until June 14, 2021. Neither party has taken any depositions, and Vaptio cannot adequately oppose Plaintiff's Motion until the Court addresses Plaintiff's discovery deficiencies.[2] For example, Plaintiff refuses to produce critical discovery regarding Plaintiff's first use of his mark and Plaintiff's sales records for products sold under the ALIEN VAPE mark. At the same time, Plaintiff filed this Motion to which such outstanding evidence is essential in raising genuine issues of material fact.

Turning to the merits of Plaintiff's Motion, Plaintiff fails to overcome the well-established principle that summary judgment is disfavored in trademark cases. Plaintiff cannot show that, as a matter of law, the ET AUTO mark creates a likelihood of confusion between Plaintiff's ALIEN VAPE mark under the Ninth Circuit's *Sleekcraft* factors. Nearly all of the *Sleekcraft* factors present significant issues of fact that need to be resolved by the trier of fact and cannot be resolved on summary judgment.

First, and most importantly, ET AUTO and ALIEN VAPE are very dissimilar marks. They differ in sight because the marks only share the vowels "E" and "A" and sound strikingly different when spoken. In addition, Vaptio's product logo does not create a substantial similarity with Plaintiff's design mark because the designs differ in style, color, as well as placement and prominence of the logo:

[2] Defendants have sent Plaintiff Defendants' version of the Joint Stipulation required by the Local Rules and are awaiting a response. Defendants have also noted the deposition of Plaintiff for June 2, 2021. (Workicho Decl. ¶ 3.)






Second, Plaintiff's ALIEN VAPE mark is not commercially strong because it lacks recognition in the relevant marketplace. Plaintiff offers *no* evidence showing extensive advertising expenditures or public recognition in the U.S. market that would evidence the strength of the mark. Moreover, Plaintiff produced no sales reports showing a significant number of sales in the U.S. or advertising expenses targeting the U.S. market.[3] Plaintiff's product is virtually unknown in the U.S. market such that few people, if any, would be likely to confuse the ET AUTO mark with his ALIEN VAPE mark. In other words, with no evidence of anything more than *de minimus* sales in the U.S., there is no reasonable basis to believe that a consumer confronted with Vaptio's product would confuse it with Plaintiff's product. Why? Because there is no evidence that anybody outside of a few scattered sales has even heard of Plaintiff's product.

The remaining *Sleekcraft* factors also favor Defendants. There is zero evidence of actual confusion. Additionally, purchasers of the parties' products exercise an elevated degree of care because these consumers offer detailed reviews of vaping

[3] This is precisely the type of discovery that Plaintiff has refused to produce and will be subject of Defendants' motion to compel.

products for a receptive audience. Defendants also did not know of Plaintiff or his product when Vaptio came up with its own brand, so Defendants could not have intended to confuse consumers. Finally, because Vaptio discontinued sales of the ET AUTO in 2019 because of poor sales, there is no likelihood of expanding the product in the future.

Plaintiff's Motion fails to show an absence of genuine issues of disputed material fact regarding whether Plaintiff asserts valid marks and whether Defendants infringed Plaintiff's marks. Accordingly, the Court should deny Plaintiff's Motion.

## II.

## BACKGROUND FACTS

### A. Vaptio and First Union are Well-Established Names in the Vaping Industry.

Vaptio is a U.S. based corporation that manufactures, imports, distributes, and sells a wide range of products in the rapidly growing e-cigarette (sometimes known as vaping) industry. (Declaration of Xiang (Amanda) Liang In Support of Defendants Vaptio, Inc. and Shenzhen First Union Technology Co., Ltd.'s Opposition to Plaintiff's Motion for Summary Judgment ("Liang Decl.") ¶ 2.) Specifically, Vaptio sells vape kits, pods, and accessories, but does not sell e-cigarette juice. (*Id.*) Established in 2014, Vaptio is a brand that is known for high quality and innovative products. (Liang at ¶ 3.) Every year, it introduces many new products to the market. (*Id.*)

First Union operates and manages Vaptio through common ownership and is based in China. (*Id.* at ¶ 4.) First Union, founded in 2004, is a worldwide leader in the e-cigarette industry. (*Id.*) It employs more than 5,000 people, holds more than 2,000 patents, and has done business under more than 300 brand names. (*Id.*) First Union and Vaptio work together to sell vaping products into the United States. (*Id.*) Together, Defendants are one of the largest competitors in the e-cigarette industry. (*Id.*)

**B. Defendants Develop and Market the ET AUTO Product, With Little Success.**

Defendants developed the idea for its ET AUTO product and released it in or around 2018. (Liang Decl. ¶ 5.) The inspiration of the product initially came from the shape of a water drop and the colors of the Audi A3 sports car. (*Id.*) Defendants' product development team initially loosely referred to the product as "alien" before refining the design of the product. (*Id.*) They eventually settled on the name ET AUTO to honor the product's automotive inspiration. (*Id.* at ¶ 6.) And at the time they developed ET AUTO, neither Vaptio nor First Union had any knowledge of plaintiff or his ALIEN VAPE product. (*Id.*)

In the U.S. market, Vaptio sold the ET AUTO product directly to consumers through Vaptio's website and marketing through its official Instagram account. (*Id.* at ¶ 7.) The product's reception in the market, however, greatly disappointed Defendants. (*Id.*) Initial sales were much lower than expected and, worse, substantial defects were reported causing customers and distributors alike to return the product for credit. (*Id.*) In and around August 2019, Vaptio discontinued the product altogether. (*Id.*)

Around the same time, Vaptio removed ET AUTO from its website product lineup. (*Id.* at ¶ 8.) When the product was removed from the main product page, like other discontinued products, Vaptio maintained a clearance product link for a few months thereafter. (*Id.*) The last sales Vaptio made through its website were to Plaintiff, who ordered the products in July 2020 before he filed the lawsuit. (*Id.*)

Not including sales to Plaintiff (who alone bought more than half of all ET AUTO product sold through the website), the last sale of ET AUTO in the United States was June 2019. (*Id.* at ¶ 9.) Total revenue for the product (including full kits and parts) sold in the U.S. was less than $107,000. (*Id.*) When including all allowable deductible costs, the ET AUTO product realized no profit. (*Id.*) Because of the

product's poor performance, Defendants have no plans of reintroducing another similarly named product. (*Id.*)

**C. Plaintiff Sues Defendants and Resists Discovery.**

After making purchases of Defendants' product, Plaintiff filed suit in August 2020. (ECF No. 1.) Vaptio diligently pursued discovery since serving its first requests in November 2020. (Workicho Decl. ¶ 4.) From December 2020 to March 2021, Plaintiff refused to engage in discovery. (*Id.*) Plaintiff finally began producing responsive documents in April 2021, but critical discovery has yet to be produced. (*Id.* at ¶ 5.) Specifically, Plaintiff produced very little discovery regarding Plaintiff's first use of his marks in commerce and produced incomplete sales and advertising records for his ALIEN VAPE mark. (*Id.*) The only sales reports Plaintiff produced in discovery do not make clear which, if any, sales Plaintiff made in the U.S. (*Id.*)

Defendants worked diligently over the past month once Plaintiff began producing documents to resolve disputes informally through multiple meet-and-confers. (*Id.*at ¶ 6.) In return, Plaintiff continued to delay producing (or at least confirming the non-existence of) documents that the parties agreed was responsive. (*Id.*) Before fulfilling his discovery obligations, Plaintiff filed this Motion on May 10, 2021. (ECF No. 95-1.)

## III.

## LEGAL STANDARD

A motion for summary judgment or summary adjudication is granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To prevail on summary judgment, the moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

The burden is on the moving party to demonstrate it is entitled to summary judgment. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998); *Retail Clerks Union*

*Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party also bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party carries its burden of production, the burden then shifts to the non-moving party to show there is a genuine issue of material fact that must be resolved at trial. *See Celotex*, 477 U.S. at 324. A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

Further, well-established Ninth Circuit law makes clear that summary judgment on trademark disputes is generally disfavored due to the intensely factual nature of the analysis. *See Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012); *see also, e.g., Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1029, 1031 (9th Cir. 2010); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002). Indeed, the Ninth Circuit recently held that "[w]here conflicting facts render it unclear whether a likelihood of confusion exists, summary judgment is inappropriate." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 994 F.3d 1107, 1118 (9th Cir. 2021).

## IV.

## ARGUMENT

### A. Plaintiff's Motion Should be Denied Under Rule 56(d).

Even though Plaintiff's Motion fails on the merits, the Court should deny the Motion under Federal Rule of Civil Procedure 56(d). Rule 56(d) provides that the Court can deny or defer consideration of a summary judgment motion if the non-moving party has not been able to sufficiently develop affirmative evidence. Fed. R. Civ. P. 56(d).

Rule 56(d) requires a party to make a timely request that identifies relevant information as well as whether there is "some basis for believing that the information sought actually exists." *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox*, 353 F.3d 1125, 1129 (9th Cir.2004). "[C]ontinuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Burlington N. Santa Fe R.. Co. v. The Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003).

As detailed above, Vaptio diligently pursued discovery since serving its first requests in November 2020. (Workicho Decl. at ¶ 4.) From December 2020 to March 2021, Plaintiff refused to engage in discovery. (*Id.*) Plaintiff finally began producing responsive documents in April 2021, but critical issues still remain. (*Id.* at ¶ 5.) Specifically, Plaintiff produced very little discovery regarding Plaintiff's first use of his marks in commerce, which is relevant to whether Plaintiff asserts valid trademark rights in this case. (*Id.*) Further, Plaintiff produced incomplete sales records for his ALIEN VAPE mark. (*Id.*) These records are directly relevant to whether Plaintiff's marks are commercially strong.

Defendants worked diligently over the past month once Plaintiff began producing documents to avoid this dispute through multiple meet-and-confers. (*Id.* at ¶ 6.) Plaintiff nonetheless continued to delay producing (or at least confirming the non-existence of) documents that the parties agreed was responsive. (*Id.* at ¶ 6.) At the same time, Plaintiff prepared its Motion and filed it in a manner that largely deprives Defendants of a meaningful opportunity to review the evidence it needs to properly oppose Plaintiff's Motion. Defendants now are in the middle of the joint stipulation procedure outlined in the Local Rules to tee up the discovery issues for the Court. (*Id.* at ¶ 3.)

Defendants have therefore met the Rule 56(d) requirements: this request is timely and identifies existing specific relevant information that Plaintiff either refuses

to provide. Accordingly, the Court should deny, or at least defer, Plaintiff's Motion to allow Defendants to complete discovery and arm themselves with the documents and information necessary to properly rebut Plaintiff's Motion.[4]

**B. Plaintiff's Motion Fails on the Merits.**

Even if the Court considers the merits, Plaintiff's Motion still fails. Plaintiff's Motion seeks summary judgment on his federal and state trademark infringement claims, federal false designation of origin, and California unfair competition claims. Claims of "federal and state trademark infringement, false designation of origin under federal law, [and] California unfair competition" share the same essential elements. *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d. 1023, 1046 (C.D. Cal. 2013).

To prevail on each of those claims, Plaintiff must establish: (1) it owns a valid and protectable interest in the mark; (2) Defendants subsequently and without authorization used a similar mark likely to cause consumer confusion, deception or mistake. *Id.* For purposes of this Motion, Defendants do not contest the validity and ownership of Plaintiff's marks. However, genuine issues of material fact exist regarding whether ET AUTO is likely to cause consumer confusion between Plaintiff's ALIEN VAPE mark.

Courts in the Ninth Circuit analyze the eight *Sleekcraft* factors to determine whether confusion is likely: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels

---

[4] Plaintiff also violated this Court's standing order, which requires parties to provide a pincite to the supporting evidence they submit or else risk the Court finding that the proffered facts supported. *See* Standing Order at 6:7-13. Plaintiff's brief fails to provide the required pincites to his supporting evidence, despite the 100-plus-page exhibits filed with the Court. (*See Generally* ECF No. 95-1.) The Court should therefore deem all of Plaintiff's offered facts unsupported. *See* Standing Order at 6:7-13 (citing *Christian Legal Soc. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.").

used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

"Not all factors are created equal, and their relative weight varies based on the context of a particular case." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 431 (9th Cir. 2017). "Although some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield Commc'ns, Inc. v. West Coast Enter. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) (citing *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1130–32 (9th Cir. 1998)). "A determination may rest on only those factors that are most pertinent to the particular case before the court, and other variables besides the enumerated factors should also be taken into account based on the particular circumstances." *Rearden*, 683 F.3d at 1209. "Given the open-ended nature of this multi-prong inquiry, it is not surprising that summary judgment on 'likelihood of confusion' grounds is generally disfavored." *Id*. at 1210.

Analysis of the *Sleekcraft* factors in this case demonstrates that genuine issues of material fact exist regarding whether consumers will confuse Defendants' ET AUTO mark with Plaintiff's ALIEN VAPE mark.

**a. Genuine issues of fact exist that the ALIEN VAPE Mark is Weak.**

"The strength of the mark is a key factor with two components: the mark's recognition in the market *(i.e.,* its commercial strength) and the mark's inherent distinctiveness (*i.e.,* its conceptual strength)." *Stone Creek*, 875 F.3d at 432. While Plaintiff's mark may have some degree of conceptual strength, Plaintiff completely fails to provide evidence that its mark has *any* commercial strength.

Commercial strength is based on actual marketplace recognition. *See Network*

*Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011). "Commercial strength may be demonstrated by commercial success, extensive advertising, length of exclusive use, and public recognition." *Adidas Am., Inc. v. Calmese*, 662 F. Supp. 2d 1294, 1303 (D. Or. 2009) (citing *M2 Software*, 421 F.3d at 1081).

Here, Plaintiff's ALIEN VAPE marks are extremely weak commercially.[5] Plaintiff asserts in a conclusory fashion that he invested hundreds of thousands of dollars into the advertising and promotion of the ALIEN VAPE marks and sold hundreds of thousands of dollars of e-cigarette products under the ALIEN VAPE marks.

Tellingly, however, Plaintiff fails to offer any factual support of these thread-bare contentions. Further, the only sales reports Plaintiff produced in discovery do not make clear which, if any, sales Plaintiff made in the U.S., and Plaintiff has refused to fully respond to discovery requests directed at this issue. (Workicho Decl. ¶ 5.) Plaintiff's production indicates that much of his business is done overseas. (Workicho Decl. ¶ 7, Ex. 2 at 7-24.) Plaintiff's non-U.S. sales are irrelevant for purposes of this action. *See Moroccanoil, Inc. v. Golan, No. CV1101974SJOJEMX,* 2012 WL 12885683, at *1 (C.D. Cal. Oct. 30, 2012) ("It is well settled that foreign use is ineffectual to create trademark rights in the United States."). And the only evidence of advertising expenses Plaintiff produced amounts to less than $5,000, again with no clarity whether this advertising was directed at the U.S. market. (Workicho Decl.

---

[5] Conceptually, Plaintiff claims that his ALIEN VAPE marks are arbitrary. However, Plaintiff's marks are suggestive at best because they use the word "VAPE," which describes or at least directly relates to Plaintiff's actual vaping products, and the term "ALIEN" suggests the product's features by tapping into the audience's imagination to associate Plaintiff's vaping products with an "out of this world" experience. Because Plaintiff's marks are suggestive, they are entitled to a limited range of protection. *See Isle of Capri Casinos, Inc. v. Flynt*, No. 216CV06148CASMRWX, 2016 WL 6495380, at *4 (C.D. Cal. Nov. 1, 2016) ("Although plaintiff's marks are suggestive, they are comparatively weak and entitled to only narrow protection.").

¶ 8, Ex. 3 at 25, 33-34, 40, 42.) It is therefore clear that Plaintiff has neither submitted into the record or produced in discovery anything coming even close to the hundreds of thousands of dollars figure identified in his Motion, making his commercial strength in the United States almost non-existent. *See Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1043, 1048 (C.D. Cal. 2013) (finding that plaintiff had a weak presence in the market despite spending $3,000,000 on advertising in Southern California).

The limited protection Plaintiff's ALIEN VAPE mark enjoys erodes even further in light of the crowded field for vape brands and products that use "alien" or related terms in their name or logo. *See One Indus., LLC v. Jim O'Neal Distrib.*, 578 F.3d 1154, 1164 (9th Cir. 2009) ("When similar marks permeate the marketplace, the strength of a mark decreases."). The record shows that there are many trademark registrations and applications that include the words alien, extraterrestrial, or similar terms for use with vaping, tobacco, or hemp products. (Workicho Decl. ¶ 9, Ex. 4 at 43-48.) The extensive third-party use of similar marks on similar goods therefore makes it extremely unlikely that consumers will be confused by the ALIEN VAPE and ET AUTO marks. *See One Indus.*, 578 F.3d at 1164.

To reiterate, Plaintiff's ALIEN VAPE mark enjoys only limited protection because it exists in a crowded field of similar marks for similar goods and is virtually unknown in the relevant market. Accordingly, genuine issues of material fact exist regarding the strength of Plaintiff's marks.

**b. Genuine issues of fact exist that the goods are not identical.**

Plaintiff argues that the proximity of the goods factor weighs in his favor because the parties sell identical products. However, that is not true. Although both parties operate in the e-cigarette industry, Plaintiff uses ALIEN VAPE and its related design mark on an e-cigarette juice, i.e. the liquid used in a vape cartridge. (Workicho Decl. ¶ 7, Ex. 2 at 7-24.) Defendants, however, sell vape pod kits, a different product, under the ET AUTO mark. (Liang Decl. ¶ 2.)

Thus, genuine issues of material fact exist regarding this factor.

**c. Genuine issues of fact exist that the disputed marks are dissimilar.**

The similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). The Ninth Circuit has "developed three axioms that apply to the 'similarity' analysis: 1) [m]arks should be considered in their entirety and as they appear in the marketplace; 2) [s]imilarity is best adjudged by appearance, sound, and meaning; and, 3) [s]imilarities weigh more heavily than differences." *Entrepreneur*, 279 F.3d at 1144. In other words, to determine whether marks are similar, courts look to lettering styles and capitalization, colors, locations of the mark on the product, prominence, sound, and meaning. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1128–29 (9th Cir. 2014).

Plaintiff argues the parties' marks are similar because they both create a commercial impression centered around alien imagery. Plaintiff also argues that the first word of both parties' marks is effectively identical because "ET" and "ALIEN" mean the same thing. Further, Plaintiff argues that both marks feature a logo design that is nearly identical.

Plaintiff, however, ignores the several, material ways in which ET AUTO and ALIEN VAPE differ. In appearance, ET AUTO and ALIEN VAPE are almost completely distinct. The two marks share only the vowels "E" and "A." They also sound strikingly different when spoken as they do not share similar syllables in either the first or second word of the marks.

To be sure, there is some limited conceptual overlap between the meaning of the isolated words "ET" and "Alien." But contrary to Plaintiff's focus on just these two words, "the marks must be considered in their entirety and as they appear in the marketplace[.]" *Brookfield*, 174 F.3d at 1054. When viewed in their entirety, a reasonable consumer would strain to come up with a conceptual overlap between "ET

AUTO" and "ALIEN VAPE."

Furthermore, although Plaintiff makes much of the fact that the parties feature a logo design of an alien head, the logos are dissimilar. On the one hand, Plaintiff's ALIEN VAPE features a grey head with eyes that are dark blue, baby blue, and white. The eye color also changes to different shades of purple on occasion. On the product labels themselves, the head is also next to the words "ALIEN VAPE" and "PREMIUM E-JUICE."







(Workicho Decl. ¶ 10, Ex. 5 at 49-50.)

By contrast, Vaptio's figure consists of only black and white colors, with no surrounding text. It also appears on the ET AUTO product itself, not on a label.



(Declaration of Bruno Tarabichi In Support of Plaintiff Mike Sarieddine's Motion for Summary Judgment Against Defendants Vaptio, Inc. and Shenzhen First Union Technology Co., LTD. ("Tarabichi Decl.") ¶ 11, Ex. G at 11.)

After considering the entirety of the marks as they appear in the marketplace, Plaintiff has not established that absence of genuine issues of material fact regarding whether the ET AUTO and ALIEN VAPE marks are confusingly similar.

**d. Genuine issues of fact exist that the lack of actual confusion weighs against a likelihood of confusion.**

"[E]vidence of actual confusion, at least on the part of an appreciable portion of the actual consuming public, constitutes strong support for a 'likelihood of confusion' finding." *Rearden*, 683 F.3d at 1210 (emphasis added). Moreover, "[e]vidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352.

Here, Plaintiff submitted zero evidence of actual confusion. Plaintiff attempts to discount this factor by arguing that such absence is irrelevant. However, the absence of actual confusion is probative when the parties co-exist in the market for a period of time. *See Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196 DOC, 2015 WL 3619204, at *13 (C.D. Cal. June 8, 2015) ("The lack of any competent evidence of actual confusion despite the fact that the marks have co-existed for three years thus weighs against a finding of likelihood of confusion"). Plaintiff claims that he entered the market at least as early as 2008, and Vaptio began selling the ET AUTO product in 2018. (Liang Decl. ¶ 5.) Thus, the lack of actual confusion carries more weight in this case because the parties' products and marks overlapped in the market for a significant period of time. Further, Vaptio has discontinued use of its product. (*Id.* at ¶ 7.) Thus, the likelihood of future confusion is zero.

Accordingly, Plaintiff fails to show the absence of genuine issues of material fact regarding whether the actual confusion factor favors Plaintiff.

**e. Genuine issues of fact exist that the parties' marketing channel eliminates confusion as to the source of the parties' products.**

Regarding the marketing channel factor, Plaintiff claims that the parties' similar use of websites and social media to target the same customers weighs in favor of a likelihood of confusion. It is true that "[c]onvergent marketing channels increase the likelihood of confusion." *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). However, the mutual marketing channel here is Instagram, which is a ubiquitous online forum for any retailer to shop his wears. As explained by the Ninth Circuit, "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation*, 638 F.3d at 1151; *see also Playboy Enters., Inc. v. Netscape Commc'ns Corp.,* 354 F.3d 1020, 1028 (9th Cir.

2004) ("Given the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight.").

Not only does the shared use of a widely used platform like Instagram not support a finding of likelihood of confusion, it actually negates it. Both parties advertise their products on their official Instagram accounts, and each party frequently uses hashtags that make clear who is behind the particular product on display. (Workicho Decl. ¶ 7, Ex. 2 at 7-24); (Tarabichi Decl. ¶ 11, Ex. G at 11.) As a result, a reasonably prudent purchaser would be able to easily delineate which brand is promoting which product, undermining a likelihood of confusion. Accordingly, Plaintiff fails to show the absence of genuine issues of fact regarding whether the use of social media favors a likelihood of confusion.

**f. Genuine issues of fact exist that vaping products attract discerning consumers.**

"In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." *Surfvivor Media*, 406 F.3d at 634. Courts look both to the "relative sophistication of the relevant consumer," *Fortune Dynamic*, 618 F.3d at 1038, and the cost of the item, *Brookfield Commc'ns*, 174 F.3d at 1060, in determining the degree of care likely to be exercised by the purchaser. The "reasonably prudent consumer" is expected "to be more discerning—and less easily confused—when he is purchasing expensive items." *Id*. "On the other hand, when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Id*.

Regarding the degree of care factor, Plaintiff claims that the parties' products are low-cost consumer goods and consumers of such products do not exercise a high degree of care in purchasing. Defendants acknowledge that the parties do not sell expensive products. But, consumers of vaping products nonetheless take care in making purchasing decisions. This is because Plaintiff produced in discovery videos

showing that the target consumers create user-generated and detailed reviews of vaping products and make these reviews available online for mass consumption. (Workicho Decl. ¶ 11.) Despite the relatively low-cost of the products, a reasonably prudent purchaser of vaping products would seek out the many video reviews of the parties' products available online and be able to distinguish between the brands ET AUTO and ALIEN VAPE. Plaintiff therefore fails to show an absence of genuine issues of fact regarding whether this factor favors a likelihood of confusion.

**g. Genuine issues of fact exist that Defendants acted in good faith in selecting ET AUTO.**

"When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993). Defendants did not intend to infringe Plaintiff's ALIEN VAPE mark because they did not have actual knowledge of Plaintiff or his products when they developed ET AUTO. (Liang Decl. ¶ 6.) And Plaintiff offers no evidence to the contrary.

Rather, Plaintiff argues that because he owns two federal registrations for ALIEN VAPE, Defendants are presumed to have intended to infringe. But the case on which Plaintiff relies to support this assertion is inapposite. The Court in *Discovery Commn'cs, Inc. v. Animal Planet, Inc.*, found that the defendants acted willfully because "Plaintiff provided Defendants" with "actual notice of Plaintiff's rights to ANIMAL PLANET mark." 172 F. Supp. 2d 1282, 1290 (C.D. Cal. 2001). Here, by contrast, there is no evidence that Plaintiff provided Defendants with actual notice of his alleged trademark rights.

Plaintiff also argues the Court can infer an intent to infringe because Defendants initially called the ET AUTO product ALIEN and Defendants allegedly are repeat infringers because they copied the product design of Suorin, a third-party competitor, in making the ET AUTO product.

These arguments are meritless. Defendants developed the idea for the ET AUTO product in 2018. (Liang Decl. ¶ 5.) The inspiration of the product initially came from the shape of a water drop and the colors of the Audi A3 sports car. (*Id.*) Defendants initially loosely referred to the product as "alien" before refining the design of the product. (*Id.*) Defendants eventually settled on the name ET AUTO to highlight "AUTO" to honor the product's automotive inspiration. (*Id.* at ¶ 6.) And contrary to Plaintiff's rank speculation, Defendants did not take any inspiration from Suorin's SUORIN DROP product in developing the ET AUTO product; rather, Defendants reviewed Suorin's product simply to compare cost and revenue data. (*Id.* at ¶ 5.)

Accordingly, Plaintiff fails to show an absence of genuine issues of fact regarding whether this factor favors a likelihood of confusion.

**h. Defendants discontinued ET AUTO.**

"[A] 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. This factor favors Defendants. Not only do they not have plans to expand the ET AUTO product line, Defendants actually discontinued the product before this lawsuit was filed because it was so unpopular. (Liang Decl. ¶ 7.) Thus, there is no evidence to indicate that Defendants will compete with Plaintiff in a similar fashion going forward. *See Surfvivor Media*, 406 F.3d at 634 (holding that although the plaintiff's "complete inability to adduce any concrete evidence of expansion plans tilt[ed] this factor in favor of" the defendant).

Accordingly, Plaintiff fails to show an absence of genuine issues of fact regarding whether this factor favors a likelihood of confusion.

## V.

## CONCLUSION

In sum, there are many reasons why Plaintiff's Motion is meritless. It is prematurely filed before Defendants received from Plaintiff critical discovery on

matters that would raise genuine issues of fact. It violates this Court's Standing Order by not providing pincites to the factual record supporting Plaintiff's assertions. Even putting aside these procedural defects, however, Plaintiff's Motion fails on the merits because genuine issues of material fact exist regarding all of the *Sleekcraft* factors. In other words, Plaintiff fails to establish that Defendants' ET AUTO mark and Plaintiff's ALIEN VAPE marks are confusingly similar as a matter of law. The Court should therefore deny Plaintiff's Motion.

DATED: May 17, 2021 LANE POWELL PC

By: *s/Mohammed N. Workicho*
David G. Hosenpud, Bar No. 147433
Kenneth R. Davis II (*pro hac vice*)
Mohammed N. Workicho (*pro hac vice*)

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Paul S. Malingagio, Bar No. 90451
Ariela R. Pier, Bar No. 313329

Attorneys for Defendant Vaptio, Inc., Shenzhen First Union Technology Co., Ltd., and Specially Appearing Defendants Yonghai Li and Fei Xu