**BRUNO TARABICHI**, CA Bar No. 215129
bruno@tmwlawfirm.com
**TMW LAW**
4750 Almaden Expy 124-359
San Jose, California 95118
Telephone: 408.298.8204
Facsimile: 408.715.6707

Attorneys for Plaintiff
Mike Sarieddine

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE SARIEDDINE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>VAPTIO, INC., a Washington corporation; YONGHAI LI, an individual; FEI XU, an individual; SHENZHEN FIRST UNION TECHNOLOGY CO., LTD., a Chinese corporation; MAGELLAN TECHNOLOGY INC., a New York corporation doing business as Demand Vape; LAN & MIKE INTERNATIONAL TRADING INC., a California corporation; BREAZY INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:20-cv-07785-VAP-MRW<br><br>**PLAINTIFF MIKE SARIEDDINE'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS VAPTIO, INC. AND SHENZHEN FIRST UNION TECHNOLOGY CO., LTD.**<br><br>Judge: Virginia A. Phillips<br>Date: June 7, 2021<br>Time: 2:00 p.m. |

# TABLE OF CONTENTS


I. INTRODUCTION ....... 1

II. ARGUMENT ....... 2

A. DEFENDANTS HAVE NOT SATISFIED THE REQUIREMENTS FOR ADDITIONAL DISCOVERY ....... 2

1. Defendants have had six months to conduct discovery ....... 2

2. Defendants Have Not Set Forth The Three Required Elements in an Affidavit Pursuant to FRCP 56(d) ....... 4

B. SARIEDDINE IS ENTITLED TO SUMMARY JUDGMENT ON HIS TRADEMARK INFRINGEMENT CLAIMS ....... 5

1. Defendants do not contest Plaintiff's prior trademark rights ....... 5

2. Defendants' use of the ET AUTO Marks creates a likelihood of confusion with Sarieddine's ALIEN VAPE Marks ....... 5

a. Strength: Sarieddine's ALIEN VAPE Marks are conceptually and commercially strong ....... 5

b. Proximity or Relatedness of Goods: Sarieddine and Defendants sell identical goods ....... 7

c. Similarity of Marks: Defendants' ET AUTO Marks are highly similar to Sarieddine's ALIEN VAPE Marks ....... 7

d. Evidence of Actual Confusion: This factor is neutral ....... 8

e. Marketing Channels Used: The parties use the same marketing channels & target the same consumers ....... 9

f. Degree of care: e-cigarette consumers do not exercise a high degree of care in their purchasing decisions ....... 9

g. Defendants' intent: Defendants intended to infringe ....... 10

h. Expansion of product lines: This factor is both neutral and irrelevant because the parties offer identical goods ....... 12

III. CONCLUSION ....... 12

# TABLE OF AUTHORITIES

**Cases**

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006) ....... 6

*Brookfield Comm. Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999) ....... 6, 8

Clauder v. Cnty. of San Bernardino, 2016 WL 145864, at *3 (C.D. Cal. Jan. 11, 2016) ....... 3

*Laukat v. ABB, Inc.*, 2020 U.S. Dist. LEXIS 106478, *15 (C.D. Cal. 2020) ....... 4

*M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1081 (9th Cir. 2005) ....... 6

*Muhammad v. California*, 2019 U.S. Dist. LEXIS 206639, *11 (C.D. Cal. 2019) ....... 2

*Pfingston v. Ronan Eng. Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ....... 3

*Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994) ....... 3

*Ray v. State Farm Mut. Auto Ins. Co.*, 2020 U.S. Dist. LEXIS 1564487, *7-8 (C.D. Cal. 2020) ....... 5

*Vapor Spot, LLC v. Breathe Vape Spot, LLC*, 2015 U.S. Dist. LEXIS 188008, *31 (C.D. Cal. 2015) ....... 8

*Yagman v. Brennan*, 2020 U.S. Dist. LEXIS 137976, *40 (C.D. Cal. 2020) ....... 5

# I. INTRODUCTION

Even after Defendants' opposition, the undisputed, material facts warranting summary judgment remain the same. In short, Defendants decided to adopt and use a trademark intentionally calculated to trade off the goodwill of Plaintiff's ALIEN VAPE Marks. Defendants egregiously called their new vaporizer ALIEN—virtually identical to Plaintiff's ALIEN VAPE. Defendants then decided to be less obvious, changing it to the synonym EXTRATERRESTRIAL and shortening it to ET AUTO, but still using an alien face design logo almost identical to Plaintiff's alien face design logo in his ALIEN VAPE Design Mark. There is no question the marks are confusingly similar. This is especially true because the parties offer identical goods: vaporizers and other e-cigarette goods. On top of that, when Defendants got caught, they stopped selling the infringing produce—an admission of wrongdoing.

Recognizing their liability for intentional trademark infringement, Defendants desperately try shift the focus onto the non-merits. Defendants go on at length about the numerous cases that Plaintiff has filed for trademark infringement. But that is inapposite—Plaintiff is entitled to police his mark against infringers. Apple, Microsoft, Disney, and other companies regularly file suits against their infringers and are not called trolls. Defendants' troll argument discriminates against smaller sized trademark owners and is a misguided attempt to try to draw attention away from the fact that they infringed. Plaintiff's other cases do not mean Defendants have not infringed.

Defendants also desperately argue that their product was unsuccessful and they didn't make any profit on it despite selling over $100,000 in the U.S. But that does not mean the Plaintiff is not entitled to judgment on liability and it does not mean that he isn't also entitled to compensation for infringement. Such a result would promote infringement and likelihood of confusion among the public—the very public policy trademark laws are meant to protect against.

This case is ripe for disposition on summary judgment. There is no dispute

over priority of rights. Defendants have conceded Plaintiff has prior, valid rights in his ALIEN VAPE Marks. And there is no dispute over likelihood of confusion. The marks are unquestionably similar and the goods are identical. These two factors by themselves would be enough to carry the day. But all the other likelihood of confusion factors also either weigh in Plaintiff's favor or are neutral.

## II. ARGUMENT

### A. Defendants Have Not Satisfied the Requirements for Additional Discovery

In their opposition, Defendants argue that this Court should deny or defer considering Plaintiff's Motion for Summary Judgment because Defendants purportedly need discovery pursuant to FRCP 56(d) in order to oppose Plaintiff's Motion for Summary Judgment.[1] ECF No. 108, at 7:23-9:3. However, as discussed below, Defendants' request to defer Plaintiff's Motion for Summary Judgment to allow Defendants to conduct discovery should be denied because (1) Defendants have had ample opportunity to conduct discovery and have failed to do so, and (2) Defendants have not submitted an affidavit as required by FRCP 56(d).

#### 1. Defendants have had six months to conduct discovery

A party that moves to defer the court's consideration of a motion for summary judgment to allow the moving party to conduct discovery necessary to oppose such motion must show that it was diligent in pursuing its previous discovery opportunities. *Muhammad v. California*, 2019 U.S. Dist. LEXIS 206639, *11 (C.D. Cal. 2019); Clauder v. Cnty. of San Bernardino, 2016 WL 145864, at *3 (C.D. Cal. Jan. 11, 2016) ("[a]n extension is not justified merely because discovery is incomplete or desired facts are unavailable."); *Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.,* 353 F.3d 1125, 1130 (9th Cir. 2004)

---

[1] The 2010 amendments to the Federal Rules of Civil Procedure changed the subparagraph lettering for Rule 56. Prior to the 2010 amendments, FRCP 56(f) set forth the rule regarding the need for discovery to oppose a motion for summary judgment. That rule has now been changed to FRCP 56(d), but the rule remains the same and the cases interpreting former FRCP 56(f) are equally applicable to the interpretation of FRCP 56(d).

("The district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past."); *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994) ("We will only find that the district court abused its discretion if the movant diligently pursued its *previous* discovery opportunities"). Failing to meet this burden is grounds for denying a Rule 56(d) request. *Id.*; *Pfingston v. Ronan Eng. Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) (affirming denial of 56(f) request for discovery because "the failure to conduct discovery diligently is grounds for the denial of a Rule 56(f) motion").

In the instant case, Defendants have had over six months to conduct any purportedly necessary discovery but have failed to do so. More specifically, discovery opened on November 23, 2020 when the parties first held their Rule 26(f) conference. ECF No. 61, at 2:1. Plaintiff did not file his Motion for Summary Judgment until May 10, 2021. ECF No. 95. That gave Defendants six months to conduct any discovery they sought was necessary. Moreover, Plaintiff put Defendants on notice that he would be filing a Motion for Summary Judgment at least as early as December of 2020. ECF No. 61, at 6:3.

Instead of diligently conducting discovery, Defendants waited until after Plaintiff filed his Motion for Summary Judgment to serve Plaintiff with a joint stipulation regarding alleged discovery responses. Tarabichi Decl., ¶¶ 2-5. However, the joint stipulation is untimely as it cannot be heard by the June 14th discovery cut-off deadline, which is also the deadline to hear discovery motions. *Id.* Likewise, it was only after Plaintiff filed his Motion for Summary Judgment that Defendants noticed the deposition of Plaintiff for June 2, 2021—very late in the discovery period. *Id.*

Disturbingly, Defendants attempt to justify their delay and lack of diligence by falsely accusing Plaintiff of not being cooperative during discovery. The opposite is actually true. In this case, Plaintiff has produced nearly 5,000 pages of documents. Tarabichi Decl., ¶¶ 6-7. Defendants have only produced 81 pages of

documents. *Id*. Even more concerning is the fact that Defendants have flat out refused to appear for properly noticed depositions. Yet, Defendants argue that Plaintiff has been uncooperative.

Consequently, it is clear that Defendants have had more than sufficient time to take any necessary discovery and their intentional failure to do so requires denying their request for discovery pursuant to Rule 56(d).

**2. Defendants Have Not Set Forth The Three Required Elements in an Affidavit Pursuant to FRCP 56(d)**

Under FRCP 56(d), a party requesting additional time to conduct discovery to oppose a motion for summary judgment must show (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist, and (3) the sought-after facts are essential to oppose summary judgment. *Laukat v. ABB, Inc.*, 2020 U.S. Dist. LEXIS 106478, *15 (C.D. Cal. 2020); *Ray v. State Farm Mut. Auto Ins. Co.*, 2020 U.S. Dist. LEXIS 1564487, *7-8 (C.D. Cal. 2020); *Yagman v. Brennan*, 2020 U.S. Dist. LEXIS 137976, *40 (C.D. Cal. 2020). If these three requirements are not satisfied, the request for discovery should be denied and the court should rule on the summary judgment motion. *Id.*

In the instant case, Defendants have not satisfied the three requirements for a request for discovery pursuant to FRCP 56(d). First, the Declaration of Mr. Workicho does not set forth the specific facts that Defendants hope to elicit by way of further discovery. Second, the Declaration makes no showing that any needed facts exist. Third, the Declaration does not explain how any sought after facts are essential to opposing the motion for summary judgment. The only thing the Declaration says is that "Plaintiff produced very little discovery regarding Plaintiff's first use of his marks in commerce and produced incomplete sales and advertising records." ECF No. 110, at 2:16-18. However, priority is not in dispute in this case (Defendants did not dispute priority in their opposition) and Plaintiff's federal registrations provide his priority date. Moreover, Defendants do not attest

by Declaration that additional sales and advertising records exist or are needed to oppose summary judgment (and in fact, they are not). As a result, Defendants' request for discovery pursuant to FRCP 56(d) should be denied for failure to satisfy the three requirements.

**B. Sarieddine Is Entitled to Summary Judgment on his Trademark Infringement Claims**

**1. Defendants do not contest Plaintiff's prior trademark rights**

In his moving papers, Plaintiff set forth the law and facts demonstrating that he owns valid, prior trademark rights in his ALIEN VAPE Marks. ECF No. 95-1, at 7:18-8:17. In their opposition, Defendants concede and do not contest Plaintiff's valid, prior trademark rights. ECF No. 108, at 9:15-16. Therefore, there is no genuine dispute as to the first element of trademark infringement.

**2. Defendants' use of the ET AUTO Marks creates a likelihood of confusion with Sarieddine's ALIEN VAPE Marks**

As underscored in Plaintiff's moving papers, courts consider the *Sleekcraft* factors to determine whether a likelihood of confusion exists. However, the factors "are not applied mechanically; courts may examine some or all of the factors, depending on their relevance and importance." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006). The fact that some factors may be neutral or irrelevant is not enough to preclude summary judgment. *Id.*, at 1078 (reversing denial of summary judgment).

**a. Strength: Sarieddine's ALIEN VAPE Marks are conceptually and commercially strong**

In assessing the strength of the mark, courts evaluate the conceptual and commercial strength of a mark. ECF No. 95-1, at 9:6-12. Importantly, however, the Ninth Circuit has made it clear that "a lack of commercial strength cannot diminish the overall strength of a conceptually strong mark so as to render it undeserving of protection." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1081 (9th Cir.

2005). This makes sense because courts often look at the commercial strength to determine whether a conceptually weak mark is strengthened by commercial success. *See, e.g., Brookfield Comm. Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999) (commercial strength "can transform a suggestive mark into a strong mark"). Furthermore, when the marks at issue are similar and goods at issue are closely related, the strength of the mark is of diminished importance. *Id*., at 1058-59.

Again, there is no question that Plaintiff's ALIEN VAPE Marks are arbitrary and, therefore, commercially strong. ECF No. 95-1, at 9:13-24, 10:11-25. Because Plaintiff's ALIEN VAPE Marks are already conceptually strong, they do not need to be bolstered or strengthened by commercial success. The commercial strength inquiry is irrelevant because, as conceptually strong marks, the ALIEN VAPE Marks are deserving of protection.

While Defendants attempt to argue that Plaintiff's ALIEN VAPE Marks are not commercially strong, they have not provided any evidence to support that argument. All they try to point to is a lack of documents in their possession—that is insufficient. Plaintiff's advertising and sales since 2008 are more than sufficient to show that his marks are commercially strong (although that showing is unnecessary since his marks are conceptually strong).

In fact, Plaintiff has been very vigilant in policing his ALIEN VAPE Marks against infringers. Even Defendants admit this. In their opposition, Defendants go on *ad nauseum* about the number of trademark lawsuits that Plaintiff has filed to police his marks. ECF No. 108, at 1:7-8. Defendants' attorney even submitted a declaration listing all of these cases. ECF No. 110, at ¶ 2; ECF No. 110-1.

It's not surprising then that, contrary to Defendants' assertion, there is no crowded field for ALIEN marks for vaping products. First, many of the listed marks identified by Defendants are not in the vaping industry (some are just online retailers). But second, Plaintiff has already policed against some of these marks and

is the process of policing his mark against the remaining ones. Tarabichi Decl., ¶¶ 8-12, Exs. A-B. For example, Plaintiff already prevailed in a cancellation proceeding against ATOMIC ALIEN and Plaintiff already obtained a default judgment against ALIEN-CLOUDVAPES. *Id*. The remaining trademarks have either received cease and desist letters or will be receiving them soon. *Id*. Therefore, there is no crowded field of ALIEN marks.

Given the conceptual strength of Plaintiff's ALIEN VAPE Marks and considering how similar the parties' marks and goods are, this factor clearly weighs in favor of a likelihood of confusion and there is no genuine issue of fact as to strength.

**b. Proximity or Relatedness of Goods: Sarieddine and Defendants sell identical goods**

In their opposition, Defendants mislead this Court by arguing that the parties sell different goods. ECF No. 108, at 12:23-28. Defendants argue that Defendants sell vaporizers (i.e., vape pod kits) while Plaintiff sells e-liquids. *Id*. It is true that Plaintiff sells e-liquids. However, what Defendants conveniently leave out is that Plaintiff also sells vaporizers—the identical good sold by Defendants. Tarabichi Decl., ¶ 13, Ex. C. Vaporizers are specifically listed in Plaintiff's federal registrations for the ALIEN VAPE Marks. ECF No. 95-3, Exs. A-B. Moreover, even if Plaintiff only sold e-liquids, e-liquids are clearly related goods as they are used in vaporizers. Therefore, the parties' goods are both identical and related. There is no genuine issue of fact that this factor weighs in favor of likelihood of confusion.

**c. Similarity of Marks: Defendants' ET AUTO Marks are highly similar to Sarieddine's ALIEN VAPE Marks**

While it is true that a court must assess the similarity of the marks in their entirety, it is also well-established that similarities are weighed more heavily than

differences." *Brookfield*, 174 F.3d at 1055. Furthermore, when the goods at issue are identical or closely related, a "diminished standard of similarity is therefore applied when comparing the marks of closely related goods." *Vapor Spot, LLC v. Breathe Vape Spot, LLC*, 2015 U.S. Dist. LEXIS 188008, *31 (C.D. Cal. 2015).

Therefore, as an initial matter, it is worth pointing out that the parties sell identical goods (i.e., vaporizers) and that Plaintiff's additional goods (e-liquids) are closely related to vaporizers (as they are used in vaporizes). As such, a lesser degree of similarity is needed for confusion.

With this standard in mind and noting that similarities are weighed more heavily than differences, the marks are clearly very similar. The first word of both parties' marks means ALIEN (EXTRATERRESTRIAL and ALIEN are synonyms). And both marks feature a logo design of an alien face. These similarities are more than enough to show that there is a lack of a genuine issue of fact as to this factor. This factor clearly weighs in favor of finding a likelihood of confusion.

**d. Evidence of Actual Confusion: This factor is neutral**

As detailed in Plaintiff's moving papers, the absence of actual confusion is unnoteworthy and irrelevant. ECF No. 95-1, at 13:8-21. In their opposing papers, Defendants disingenuously argue that lack of actual confusion is relevant when the parties exist in the market for a period of time. ECF No. 108, at 16:2-4. However, by Defendants' own admission, the parties' products did not coexist in the market for any appreciable period of time. According to Defendants' own declaration, Defendants introduced the infringing ET AUTO product in late 2018 and discontinued the mark in the summer of 2019. ECF No. 109, ¶¶ 5-9. This means that Vaptio's infringing ET AUTO product only coexisted with Plaintiff's ALIEN VAPE products for six to eight months (a fact that Defendants appear to try to conceal in this portion of their opposition brief). This is not enough time to create instances of actual confusion. Therefore, in accordance with Ninth Circuit precedent, this factor is neutral.

**e. Marketing Channels Used: The parties use the same marketing channels & target the same consumers**

As noted in Plaintiff's moving papers, convergent marketing channels increase the likelihood of confusion and both parties sell their e-cigarette products on the Internet through websites and social media but also through brick and mortar retail smoke shops and vape shops. ECF No. 95-1, at 13:24-14:9. In response, Defendants only argue that all businesses use the Internet and social media. ECF No. 108, at 16:23-28. However, Defendants conveniently gloss over the fact that both parties' products are sold in brick and mortar retail smoke shops and vape shops. Defendants have put forth no evidence in their opposition that would create a genuine issue of material fact as to this factor.

**f. Degree of care: e-cigarette consumers do not exercise a high degree of care in their purchasing decisions**

In his moving papers, Plaintiff cited federal cases that hold the e-cigarette products are low-cost consumer goods that consumers do not exercise a high degree of care in purchasing. ECF No. 95-1, at 14:12-15:7. In response, Defendants admit that the goods at issue are low-cost. ECF No. 108, at 17:26-27. Defendants then argue that because there are online reviews of vaping products, customers must exercise care. ECF No. 108, at 17:27-18:7. However, Defendants' conclusion is simply a leap without any evidence. The only thing that Defendants have shown is that there are online reviews. There is no evidence that consumers watch these reviews, no evidence that any substantial number of consumers watch these reviews, that these reviews have any impact on purchasing decisions, or that they even involve the products at issue. But there are online review videos for every good –even gum. *See, e.g.,* https://www.youtube.com/watch?v=kLWBV1nI-vY. But no one would argue that consumers exercise a high degree of purchasing care in buying gum. Therefore, with regard to this factor, there is no dispute that e-cigarette consumers do not exercise a high degree of care, which weighs in favor of

a likelihood of confusion.

**g. Defendants' intent: Defendants intended to infringe**

As set forth in Plaintiff's moving papers, Defendants are charged with constructive notice of Plaintiff's federal trademark registrations. ECF No. 95-1, at 15:9-16:23. By adopting the infringing ET AUTO Marks with such knowledge, Defendants are deemed to have acted intentionally. There is no factual dispute as this point and it is sufficient to make this factor weigh in Plaintiff's favor.

Even worse, Defendants produced documents that clearly show that they initially called their infringing product ALIEN and copied Suorin's SOURIN DROP trade dress too. ECF No. 95-4, ¶¶ 3-5, Exs. A-B. While Defendants attempt to dispute this by using the Declaration of Xiao (Amanda) Liang, her declaration must be disregarded because she has no personal knowledge. First, as she states in her Declaration, she is the Executive Assistant to the General Manager of First Union. ECF No. 109, ¶ 1. By virtue of her position, it is clear she had no involvement in the naming or development of the ET AUTO product. Second, and more importantly, Ms. Liang submitted an earlier declaration in this case during a discovery dispute in which she admitted that neither she nor anyone employed with First Union or Vaptio remain who were involved in the development and marketing of ET AUTO. *See* ECF No. 103, ¶¶ 7. Therefore, nothing in her declaration can be based on her personal knowledge and should be disregarded. That leaves the documents produced by Defendants to speak for themselves and those documents show Defendants' intentional infringement of Plaintiff's ALIEN VAPE Marks, as well as a third party, Suorin's, trade dress.

In fact, Defendants' pattern of infringement goes beyond the ET AUTO product in which they copied Suorin's trade dress and Plaintiff's ALIEN VAPE Marks. Defendants have also knocked off Apple's Airpods by creating AIRGO, Vaptio's Airpod vaping knock-off:













*See* Tarabichi Decl., ¶ 14, Ex. D; *see also* https://www.instagram.com/p/B-b_-5SlrEi/?utm_medium=copy_link; https://www.instagram.com/p/CMrqorMBGd2/?utm_medium=copy_link .

Finally, it is worth pointing out that Ms. Liang's assertion that the ET AUTO was inspired by the Audi sports car is contradicted by the evidence. First, as referenced earlier, Ms. Liang lacks personal knowledge. Second, in her declaration, it actually only says the Audi car was the inspiration for only "the colors." ECF No. 109, at 2:19. Third, the documents produced by Defendants show clearly that Defendants copied Suorin's trade dress, not the Audi car. ECF No. 95-4, Ex. A. Fourth, Defendants advertise the design as a space ship, not a sports car:




*See also* https://www.instagram.com/p/BsZb4kzl-cC/?utm_medium=copy_link .

**h. Expansion of product lines: This factor is both neutral and irrelevant because the parties offer identical goods**

As explained in Plaintiff's moving papers, this factor is neutral because the goods of the parties are related. ECF No. 95-1, at 16:24-17:2. In their opposition, Defendants incorrectly argue that this factor favors them because they have discontinued the infringing ET AUTO product. However, this factor does consider whether a defendant has ceased using the infringing mark; rather, it looks at the potential expansion of product lines. Therefore, contrary to Defendants' assertion, this factor remains neutral and a nonfactor.

## III. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for Summary Judgment.

Dated: May 24, 2021

Respectfully submitted,

TMW LAW

By /s/ Bruno Tarabichi
Bruno Tarabichi
Attorneys for Plaintiff
Mike Sarieddine